# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 21, 2005

## STATE OF TENNESSEE v. BERNARD THOMAS NELSON

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40400413     John H. Gasaway, Judge**

———

**No. M2005-00764-CCA-R3-CD - Filed January 24, 2006**

———

On appeal, the defendant challenges the sufficiency of the evidence to support the verdict and the denial of alternative sentencing. Following our review, we conclude that the evidence presented was sufficient to support the jury's verdicts and that the denial of alternative sentencing was justified given the defendant's lengthy history of criminal activity and the inability of probation to deter him from such conduct. Therefore, we affirm the convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Roger E. Nell, District Public Defender, for the appellant, Bernard Thomas Nelson.

Paul G. Summers, Attorney General and Reporter; Leslie Price, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Beiber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

The defendant, Bernard Thomas Nelson, was convicted of burglary (a Class D felony) and theft of property under $500 (a Class A misdemeanor). He was sentenced as a Range I, standard offender to concurrent terms of two years and eleven months and twenty-nine days for the offenses, respectively. In this direct appeal, the defendant contends that the evidence was insufficient to support the verdicts and that the trial court erred in failing to grant alternative sentencing.

At trial, Sergeant J.W. Hunt of the Clarksville Police Department testified that, as he was traveling home from work between eight and nine o'clock in the evening on May 6, 2004, he noticed

the defendant looking into the window of Audio Enhancers, a car audio store that was closed for the day. To further investigate, Hunt took an "U-shaped" path around Red River Street and pulled into a parking lot behind Clarksville Fasteners, a business located across the street from the audio store. The route took Hunt approximately one to three minutes to travel and covered a span of one-half mile. As he exited his cruiser, he saw the defendant walking next to Clarksville Fasteners carrying two small plastic boxes. He ordered the defendant to lay the boxes down, and he searched the defendant for weapons. After Hunt notified the dispatcher, Sergeant Cheryl Anderson and an accompanying patrol officer responded in assistance. Although no signs of forced entry were found at Audio Enhancers, Anderson noticed that the glass in the front door of Clarksville Fasteners had been broken. Upon further inspection, Hunt discovered a large rock inside the business that had been used to break the glass. He remained on the scene until the owner of the business arrived approximately thirty minutes later.

On cross-examination, Hunt testified that, although the lights were on in Audio Enhancers, he knew the business was closed because he was familiar with it and because there were no vehicles in front of the store. He reiterated that the loop he made after first noticing the defendant took approximately one to three minutes. Finally, he stated that the front door was not broken when he initially saw the defendant.

On redirect examination, Hunt testified that he noticed Clarksville Fasteners as he passed by because of the previous criminal activity that had occurred in that area. He further noted that he was "[o]ne hundred percent sure that there was no damage to that business [when he passed by]" and that he first noticed the damage when he attempted to cross the street to return to his patrol car. On recross-examination, Hunt testified that he did not recall whether there were labels on the boxes being carried by the defendant. He further stated that the dimensions of the boxes were approximately three inches by four inches by six inches and that they did not appear large enough to contain audio equipment.

Sergeant Cheryl Anderson testified that she responded to the call at Clarksville Fasteners upon Sergeant Hunt's request for assistance. She stated that she was not briefed on the situation before she arrived and that she did not notice the business before she parked her car and made contact with Hunt. Anderson testified that she and Hunt checked the buildings while her accompanying officer stayed with the defendant. She stated that they found Audio Enhancers' door intact but discovered that the glass in the right front door of Clarksville Fasteners was shattered. She and Hunt then searched the building but found no other suspects. Anderson also noted that the cash register had not been disturbed. She testified that she and Hunt contacted the owner and helped him secure the door. On cross-examination, Anderson stated that she did not notice the door being broken when she initially drove past Clarksville Fasteners. She further noted that there were no video monitors at either establishment at the time of the incident.

James Sawyer testified that he was the owner of Clarksville Fastener and Supply, located at 1017 College Street. He stated that there are two entrances to the business and that both have double glass doors. He further noted that there was no video surveillance or alarm in place at the time of

the incident. Sawyer recalled that his store closed at 4:30 p.m. that day, which was standard closing time, and that he received a phone call from the police at 8:30 p.m. When he arrived at the store, he found the glass on the right side of the front door broken and two thirds of a concrete block inside the door.

Upon inspection of his inventory, Sawyer discovered three tool kits missing, with a total approximate value of $160. He stated that two of the boxes contained security bits and the other held "bit drivers for small hex head screws and phillips heads screws." Sawyer stated that the kits were shelved twelve to fifteen feet from the door and that it would take only "a second or two" to retrieve them and exit. He further noted that the boxes were returned to him by police. Finally, Sawyer stated that he gave no one permission to enter the building after close that day. On cross-examination, Sawyer testified that he had no contact with the store between close of business and the time the police contacted him. He further stated that the kits contained industrial tools that would not likely be found in a personal workshop.

As the final witness for the State, Detective Nicholas Newman testified that he helped Sergeant Anderson in determining the identity of and contacting the owner of Clarksville Fasteners. He stated that while he was in the defendant's presence, the defendant spontaneously stated that the police "had gotten lucky." He further noted that, in his experience, pawn shops will sell industrial tools.

The defendant testified that, on the evening of the incident, he was walking up College Street to the American Legion when he heard Sergeant Hunt call for him to come across the street to Clarksville Fasteners. Upon complying, Hunt asked the defendant if he knew anything about the burglary, to which the defendant responded that he did not. The defendant stated that Hunt then asked him to cross the street and retrieve the rest of the boxes from the bushes. He testified that he and Hunt walked around the building and spoke for approximately ten minutes, after which Hunt called for backup. The defendant stated that he did not break into the building and did not have possession of the boxes.

On cross-examination, the defendant testified that he was walking past Audio Enhancers when he first saw Hunt in front of Clarksville Fasteners. He further noted that Hunt was holding metal boxes. The defendant stated that Hunt "tried to get [him] two or three times [before]." He then contradicted his testimony and stated that he was "positive" that the boxes were not in the bushes and that Hunt did not ask him to cross the street and retrieve the boxes from the bushes. The defendant stated that Detective Newman did not question him and that he did not make any statements in Newman's presence. Finally, the defendant stated that he left the Elk's Lodge to go to the American Legion because they have a free fish fry each Saturday night. Following the presentation of proof, the defendant was found guilty on both counts.

Analysis

I. Sufficiency

This court does not re-weigh or re-evaluate the evidence in determining sufficiency. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict, once approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Accordingly, the State is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences which may be drawn therefrom. Id. It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence, however, must exclude every other reasonable theory or hypothesis other than guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Id. (citations omitted).

"A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(1) (2003). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2003).

Taken in a light most favorable to the State, the evidence established that the defendant was observed by Sergeant Hunt peering in the window of a closed business across the street from the burglarized establishment. Upon further investigation, Hunt saw the defendant carrying small plastic boxes, ultimately identified as the items taken from Clarksville Fasteners. Hunt and Anderson found the front glass door of Clarksville Fasteners shattered and no other suspects inside. Sawyer, the owner of Clarksville Fasteners, testified that three kits containing specialized drill bits were taken from his store without his consent. He noted that the kits were located in close proximity to the front door and that they could be taken within a matter of seconds. Finally, Detective Newman stated that he heard the defendant remark that the police "had gotten lucky," in apparent response to the arrest. It is our determination that the evidence, taken cumulatively, was sufficient to support the convictions for burglary and theft under $500.

## II. Denial of Alternative Sentencing

This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) [a]ny statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. T.C.A. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. T.C.A. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized

punishment is the essence of alternative sentencing. <u>State v. Dowdy</u>, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. <u>State v. Moss</u>, 727 S.W.2d 229, 235 (Tenn. 1986).

We conclude that the trial court did not err in denying alternative sentencing. At the sentencing hearing, the State submitted only the presentence report, and the defendant did not present any additional evidence. Upon consideration of the factors enumerated in Tennessee Code Annotated section 40-35-210, the trial court made the following findings:

> [H]is criminal history dates back to when he was 18. He was convicted of criminal trespass at age 18; attempt to commit a felony at age 19, the felony being larceny; third degree burglary when he was 23; burglary with a firearm when he was 24; third degree burglary at 24; third degree burglary at 25; public intoxication at 39; possession – misdemeanor possession of controlled substance at 39; theft – misdemeanor theft at 39; misdemeanor vandalism at 39; public intoxication at 40, two convictions; D-U-I when he was 41; theft of a vehicle at 41; theft of property, it was reduced down to misdemeanor theft; disorderly conduct at 42; assault – misdemeanor assault at 43; public intoxication at 43; another count of public intoxication 43; disorderly conduct at 43; misdemeanor theft at 44; misdemeanor assault at 44; disorderly conduct at 45; and now he has been convicted of burglary and theft again.
>
> He has been on probation on numerous occasions. The Court believes that the likelihood that he would satisfactorily complete a release status in the community is nonexistent. He is ordered to serve a sentence of two years at T-D-O-C in confinement under count one, and 11 months and 29 days at T-D-O-C in confinement. Sentences to be served concurrently. He's remanded.

We agree with the trial court that the defendant's lengthy history of criminal activity, coupled with the failure of probation to effectively deter him from such conduct, justified the denial of alternative sentencing.

## Conclusion

The convictions and sentences are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE